In the Matter of WEN & LIZ REALTY CORP., Appellant, v BOARD OF ZONING APPEALS, TOWN OF HEMPSTEAD, Respondent.

Second Department, June 13, 1983

APPEARANCES OF COUNSEL

*Horowitz, Feinberg, Lifland & Hirsch (Matthew Feinberg* of counsel), for appellant.

*W. Kenneth Chave, Jr., Town Attorney (Jeffrey L. Stadler* of counsel), for respondent.

OPINION OF THE COURT

NIEHOFF, J.

This is a CPLR article 78 proceeding to review a determination of the respondent Board of Zoning Appeals of the Town of Hempstead dated April 6, 1982, which denied the application of petitioner for a special exception permit to use its store premises for a place of public assembly and amusement so as to operate video games in a section of the premises to be used for a game room.

Special Term dismissed the proceeding holding that "[i]t cannot be said that the determination of the Board was irrational and unsupported by evidence presented at the hearing", and petitioner appeals. We affirm.

Briefly stated, the facts are as follows:

The petitioner is the owner and landlord of certain store premises located on the southeast corner of Wantagh Avenue and Linden Street in Wantagh, New York. The subject property is situated within a business district and is improved with a one-story masonry building. The building is used as a retail store which sells such items as cigarettes, tobacco, candy, milk, greeting cards, school supplies and magazines. The surrounding area is a mixed one with gasoline service stations situated to the north and south of the store and a single-family residential district abutting the store to the west and on part of the north side of the premises.

For a period of three years prior to August 11, 1981 petitioner maintained five video game machines on the premises. Petitioner claims that at no time was it aware of the fact that the use of video game machines required a special exception permit for a game room area and that when it became aware of the requirement it made application for the permit.

Thus, on August 11, 1981, petitioner made application to the Department of Buildings of the Town of Hempstead for a building permit for a special use to permit game machines at the subject premises. The application was denied and an appeal was taken to the respondent Board of Zoning Appeals of the Town of Hempstead.

Public hearings were held on October 14, 1981 and March 10, 1982, and on April 1, 1982 the respondent board voted to deny the petitioner's application.

Subdivision B of section Z-1.0 of the Building Zone Ordinance of the Town of Hempstead relating to special use permits provides in relevant part that:

"(a) Before such approval shall be given, the Board of Appeals shall determine:

"1. That the use will not prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts;

"2. That the use will not prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts;

"3. That the safety, the health, the welfare, the comfort, the convenience or the order of the Town will not be adversely affected by the proposed use and its location; and

"4. That the use will be in harmony with and promote the general purposes and intent of this ordinance."

In its resolution dated April 1, 1982, the board made reference to the fact that it had inspected the premises and based on the record and its inspection found, *inter alia,* that (1) the proposed use of a small area of the existing store is a "special exception and to merit approval, applicant must satisfactorily prove compliance with all Building Zone Ordinance standards"; (2) the "game room is patronized by young people, primarily under sixteen years of age" and the board can assume that "children as young as 10 years of age or younger, could readily avail themselves of the game room"; (3) the game room and a magazine rack are located on the southerly wall separated by a distance of approximately five feet and the subject magazine rack displays various magazines which contain photographs of men and women, who appear to be engaged in various sexual acts, as well as photographs of the genitals, photographs depicting acts of bondage, sadism, and masochism; and (4) because of the close proximity of such magazines to the game room, "the subject store premises is not a suitable place for a game room patronized by young children" and there will be an adverse affect on such young children.

After setting forth its findings of fact, as aforesaid, the respondent made the following determination:

"1. That the proposed use will prevent the orderly and reasonable use of adjacent properties or of properties in adjacent use districts;

"2. That the proposed use will prevent the orderly and reasonable use of permitted or legally established uses in the district wherein the proposed use is to be located or of permitted or legally established uses in adjacent use districts;

"3. That the safety, the health, the welfare, the comfort, the convenience or the order of the Town will be adversely affected by the proposed use and its location; and

"4. That the proposed use will not be in harmony with nor promote the general purposes and intent of this Ordinance."

The petition in the article 78 proceeding before us which challenges the respondent's determination to deny the special use permit alleges that the primary basis for the rejection of the application was the finding by the respondent board that "the magazines sold by Petitioner upon its premises to be such that a game room patronized by children would not be a suitable place by reason of said magazines". The petition goes on to claim that by its actions the zoning board has wrongfully set itself up as a censor of which magazines or periodicals should be permitted in the community and that if the denial were to stand it "would deprive Petitioner of its constitutional rights to freedom of speech and would result in Respondent being given the authority to act as a censor of reading material within the Town of Hempstead".

Special Term rejected petitioner's contention that the respondent was acting as a "censor" in this matter and concluded that a municipality may exercise its power to protect the health, safety, welfare and morals of minors in the community by refusing to grant a permit to maintain a game room in premises which sell magazines containing photographs of men and women who appear to be engaged in various sexual acts, as found by the board during its inspection of the subject premises. In addition, Special Term found that video games are not a form of free speech protected by the First Amendment.

Special Term correctly held that the denial of petitioner's application was not arbitrary, capricious or an abuse of discretion (see *Matter of Lemir Realty Corp. v Larkin,* 11

NY2d 20, 24). The board has no authority to issue a special exception permit except where the application complies with the standards of the zoning ordinance (*Matter of Tandem Holding Corp. v Board of Zoning Appeals of Town of Hempstead,* 43 NY2d 801; *Matter of Cappadoro Land Dev. Corp. v Amelkin,* 78 AD2d 696).

In this case the board found that the proposed use would not comply with several requirements of the zoning ordinance. Of particular importance is the provision that, as a condition to approval of the use, the board must find "[t]hat the safety, the health, the welfare, the comfort, the convenience or the order of the Town will not be adversely affected by the proposed use and its location" (art 12, §Z-1.0, subd [B], par [a], cl 3).

It can hardly be denied that video games constitute an attractive magnet to children. Indeed, in the case at bar all concerned were well aware of the fact that the "game room" would be used primarily by children under 16 years of age. Approximately five feet away from the place of the proposed accessory use stood a rack containing a large array of magazines for inspection and sale. The record before us includes a sampling of the magazine covers on open display in the rack. The board's description of the nature of such magazines is no understatement. If one wished to describe them euphemistically the best one could do would be to label them as "adult" magazines intended for "mature" persons. By no stretch of the imagination are they the type of magazine that responsible adults would make available to children such as those who would be frequenting the game room.

The thrust of petitioner's claim, as set forth in its petition, is that by denying its application to maintain a game room the respondent has "set itself up as a censor of what magazines or periodicals shall be permitted in the community". The respondent has done no such thing.

Throughout these proceedings, the respondent has acknowledged that the sale of those magazines is lawful, and requires no special permit from the Town of Hempstead. The petitioner's right to sell such magazines is not the issue in this case. Rather, the issue is whether the record herein provides adequate justification for the board's find-

ing that petitioner has failed to establish that minors in the community frequenting the game room will not be adversely affected by the display of the magazines if the petitioner's request for the use of part of its premises as a game room is granted. We are of the view that the respondent board's findings as to the welfare of the children in the community was not without a rational basis (see *Matter of D & G Entertainment v Rose,* 86 AD2d 608). Inasmuch as our courts have recognized that society has a transcendent or exigent interest in protecting the welfare of children, which includes protecting them from materials of a sexually explicit or pornographic nature, permissible for adults but not for children (*Ginsberg v New York,* 390 US 629; see *Bookcase, Inc. v Broderick,* 18 NY2d 71), we conclude that the zoning board properly exercised its power under the zoning ordinance to protect the well-being of the minors in the community.

In the final point of its brief on appeal petitioner asserts that video games are a form of free speech protected by the First Amendment. The decision in the case of *Gameways, Inc. v McGuire* (NYLJ, May 27, 1982, p 6, col 2), an action to enjoin the police department of the City of New York and others from interfering with the plaintiff's sale of video games, is cited for that proposition. In that case, Special Term concluded that video games were protected by the First Amendment.

However, we are not told what result petitioner contends flows from a holding that such games are a form of free speech, i.e., whether petitioner maintains that every applicant for a special use permit to maintain a game room in the Town of Hempstead for the use of video machines is automatically entitled to such permit because of the First Amendment, or whether petitioner maintains that under the particular circumstances of this case issuance of the permit is mandated. Petitioner simply leaves it to this court to make an appropriate argument on its behalf. This obligation we will not assume. What is more, the issue of the First Amendment as it pertains to video games was not presented at the hearings before the respondent board and the article 78 petition does not contain any claim to the effect that respondent was required to issue the permit

because video games are a form of free speech protected by the First Amendment.

Although there is no reference to such claim in the petition it does appear that, in some fashion, petitioner raised such argument before Special Term because that court wrote: "Contrary to the contentions of the petitioner, it is the view of this court that video games are not a form of free speech protected by the First Amendment. In this respect the court is in agreement with Judge McLaughlin's holding in *Americas Best Family Showplace v. City of New York* (U.S. Dist. Court, Eastern District of New York, 81 Civ 4087, 3/3/82). (see also *City of N.Y. v Rambling Ram Realty Corp.*, Galligan, J., N.Y.L.J. 6/29/82, p. 6, col. 1)."

In our opinion, petitioner, who never presented to the board or raised in his petition the argument that he was entitled to the permit because video games are protected by the First Amendment, has failed in this case to demonstrate that the First Amendment required the board to issue the permit which would allow him to operate a game room containing video game machines.

The judgment of Special Term dismissing the petition should be affirmed.

MANGANO, J. P., GIBBONS and BRACKEN, JJ., concur.

Judgment of the Supreme Court, Nassau County, dated August 16, 1982, affirmed, with costs.